NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

HATIKVAH INTERNATIONAL ACADEMY CHARTER SCHOOL,

Plaintiff,

v.

EAST BRUNSWICK TOWNSHIP BOARD OF EDUCATION *et al.*,

Defendants.

Civ. No. 20-2382

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Application for a Preliminary Injunction filed by Plaintiff Hatikvah International Academy Charter School ("Plaintiff"). (ECF No. 1.) Plaintiff challenges a decision by an Administrative Law Judge ("ALJ") as to the respective obligations of Plaintiff and Defendant East Brunswick Township Board of Education ("East Brunswick") to pay for a disabled student's private school placement while a due process petition brought by Defendant East Brunswick is pending. (*See* Compl. at 14, ECF No. 1.) Defendant East Brunswick opposes. (ECF No. 9.) The Court has decided this matter based upon the written submissions of the parties and a telephonic hearing held on May 7, 2020. For the reasons stated herein, Plaintiff's Application for a Preliminary Injunction is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

This case is brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Under the IDEA, a state receiving federal education funding must provide a "free appropriate public education" ("FAPE") to children with disabilities. 20 U.S.C. § 1412(a)(1). "To the maximum extent appropriate," such children must be educated in the "least restrictive environment." § 1412(a)(5). "School districts provide a FAPE by designing and administering a program of individualized instruction that is set forth in an [individualized education program ("IEP")]." *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 384 F. App'x 58, 60 (3d Cir. 2010) (citing 20 U.S.C. § 1414(d)). The IEP must be "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (quoting *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 181 (3d Cir. 1988)).

H.K. is a fourth grader with attention deficit hyperactivity disorder, oppositional tendencies, and developmental delays. (Laurel School IEP at 4, Pl.'s Ex. A, ECF No. 1.) He lives with his parents, A.K. and R.K., in East Brunswick, New Jersey. (ALJ Order at 3, Pl.'s Ex. G, ECF No. 1.) Before the 2018–19 school year, H.K. was enrolled at Plaintiff Hatikvah, a charter school that serves as the local education agency ("LEA") responsible for providing H.K. with a FAPE. (Compl. ¶ 7; Def. E. Brunswick's Due Process Pet. at 97,[1] Pl.'s Ex. D, ECF No. 1.) A charter school is a public school operated under a charter granted by the New Jersey

[1] The page numbers to which the Court refers when citing this document are the CM/ECF page numbers.

Commissioner of Education, run independently of a local board of education, and managed by a board of trustees. N.J. Stat. Ann. § 18A:36A-3(a). Funding for charter schools comes from the state and local school districts. § 18A:36A-12.

In September 2018, Plaintiff proposed an IEP (the "Bridge Academy IEP") that would place H.K. at the Bridge Academy School, a private school in Lawrenceville, New Jersey. (Grayson Certification, Ex. A, ECF No. 1-4.) H.K.'s parents rejected that proposal and unilaterally moved H.K. to the Laurel School of Princeton (the "Laurel School"), a private school in Princeton, New Jersey. (ALJ Order at 3.) They then filed an administrative due process petition (the "Bridge Academy Matter") against Plaintiff and Defendant East Brunswick seeking reimbursement for H.K.'s costs of attendance at the Laurel School. (*See* Pl.'s Ex. B; ALJ Order at 3.) Defendant East Brunswick was a party to the Bridge Academy Matter, but did not object to H.K.'s placement at that time. (Compl. ¶ 13.)[2]

On October 28, 2019, H.K.'s parents and Plaintiff recorded a settlement before ALJ Jeffrey Rabin that developed a new IEP placing H.K. at the Laurel School ("Laurel School IEP"). (Settlement Tr. 31:23–32:1, Pl.'s Ex. C, ECF No. 1; Laurel School IEP at 1.) In connection with the settlement, Plaintiff agreed to pay a total of $70,000 to H.K.'s parents and their counsel. (Settlement Tr. 8:11–14, 9:6–10, 23:6–24:3.) The Laurel School IEP classified H.K. as "multiply disabled," meaning that he has "two or more disabling conditions, the combination of which causes such severe educational needs that they cannot be accommodated in a program designed solely to address one of the impairments." (Laurel School IEP at 4 (citing

[2] The Laurel School is a private school that is not currently recognized as an Approved Private School for Students with Disabilities ("APSSD") by the State of New Jersey. (Opp'n at 2, ECF No. 9.)

N.J. Admin. Code § 6A:14-3.5(c)(6)).) Defendant East Brunswick's counsel did not formally appear at the settlement hearing. (*See* Settlement Tr. 4:6–20, 22:17–22; ALJ Order at 4.)

On November 27, 2019, Defendant East Brunswick filed a timely due process petition with the New Jersey Department of Education's Office of Special Education Programs, challenging H.K.'s placement at the Laurel School and arguing that Defendant East Brunswick can provide H.K. with a free, appropriate public education in a less restrictive environment. (Def. E. Brunswick's Due Process Pet. at 98.) On January 21, 2020, H.K.'s parents filed an emergent motion to compel Defendant East Brunswick to pay for H.K.'s Laurel School costs while Defendant East Brunswick's due process proceeding is pending. (ALJ Order at 2.) On February 4, 2020, ALJ Susan Olgiati held oral argument on the parents' emergent motion. (*Id.* at 3.)

On February 6, 2020, ALJ Olgiati ruled on H.K.'s parents' emergent motion. (Pl.'s Ex. G.) Because the parties had no dispute as to H.K.'s "stay-put" placement, ALJ Olgiati ordered that H.K. continue to attend the Laurel School pending resolution of Defendant East Brunswick's due process petition. (ALJ Order at 6, 10.) ALJ Olgiati further concluded that, because Defendant East Brunswick had transportation capabilities, it would be responsible for transporting H.K. to and from the Laurel School during the pendency of its due process proceeding. (*Id.* at 10 n.7.) During that time, Plaintiff would be responsible for the costs of H.K.'s tuition at the Laurel School and the costs of transporting H.K. to and from the Laurel School. (*Id.* at 10.) ALJ Olgiati noted that, "[i]f [Defendant] East Brunswick is unsuccessful in its due process challenge, [Plaintiff] Hatikvah may seek reimbursement from [Defendant] East Brunswick" for the tuition and transportation costs incurred while the due process challenge was pending. (*Id.*) Plaintiff appeals ALJ Olgiati's decision to this Court. A hearing on Defendant East

Brunswick's due process petition is scheduled for July 8, 2020 before ALJ Olgiati. (Jan. 30, 2020 Hr'g Tr. 23:18–24:5, Pl.'s Ex. E, ECF No. 1.)

**II. Procedural History**

Plaintiff filed its Application for a Preliminary Injunction on March 4, 2020. (ECF No. 1.) Plaintiff returned two Waivers of Service executed by Defendants on March 20, 2020. (ECF Nos. 4, 5.) The Court held a telephonic conference with the parties on March 26, 2020, during which the parties agreed upon a briefing schedule. (ECF No. 6.) On April 17, 2020, Defendant East Brunswick submitted an Opposition to Plaintiff's Application for a Preliminary Injunction. (ECF No. 9.) On April 28, 2020, Plaintiff filed a Reply. (ECF No. 12.) On May 7, 2020, the Court held a telephonic hearing on Plaintiff's Application. Plaintiff's Application for a Preliminary Injunction is presently before the Court.

## LEGAL STANDARDS

**I. "Automatic Injunction" Under the IDEA**

Under the IDEA, a child is entitled to remain in his or her "then-current educational placement" during the pendency of IDEA due process proceedings. 20 U.S.C. § 1415(j). "This provision, known as the IDEA's 'stay-put rule,' serves 'in essence, as an automatic preliminary injunction,' . . . reflecting Congress' conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved . . . ." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014) (quoting *Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 190 (3d Cir. 2005); *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)), *cert. denied*, 135 S. Ct. 2309 (2015). Parties moving for an order to maintain a child's educational placement while an IEP dispute is pending "are

entitled to an order without satisfaction of the usual prerequisites to injunctive relief." *Drinker*, 78 F.3d at 864.

## II. Preliminary Injunction

In order to obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability of eventual success in the litigation, . . . (2) that it will be irreparably injured . . . if relief is not granted . . . (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). "[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). The moving party must show a "significantly better than negligible but not necessarily more likely than not" ability to win on the merits and "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 179. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 179 (citation omitted). The court retains "the traditional flexibility to granting interim equitable relief in which the district court has full discretion to balance the four factors once gateway thresholds are met." *Id.* at 178 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)).

# DISCUSSION

## I. Standard of Review

"In IDEA cases, a district court is required to give 'due weight' to the factual findings in state administrative proceedings." *M.K. v. Roselle Park Bd. of Educ.*, 2006 WL 3193915, at *8

(D.N.J. Oct. 31, 2006) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). Under this standard, "a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." *Id.* (quoting *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003)). "For questions of law, a district court applies a *de novo* standard to the review of administrative decisions in IDEA cases." *Id.* (citations omitted).

**II. Plaintiff's Right of Action and Jurisdiction Under the IDEA**

Defendant East Brunswick argues that Plaintiff does not have a statutory right of action under the IDEA to appeal ALJ Olgiati's decision. (Opp'n at 6–8.) "[P]rivate rights of action to enforce federal law must be created by Congress. . . . The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

The IDEA contains a provision enabling parties in specific circumstances to bring civil actions in federal district courts to appeal administrative decisions. The provision states,

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). The IDEA's "stay-put" provision itself contains no express language authorizing appeals of "stay-put" orders. *See* 20 U.S.C. § 1415(j). However, courts in this district have concluded that § 1415(j) enables parties aggrieved by "stay-put" orders to bring civil actions in federal district court. *See R.S. v. Somerville Bd. of Educ.*, 2011 WL 32521, at *7 (D.N.J. Jan. 5, 2011) (reviewing an ALJ's "stay-put" order); *M.K.*, 2006 WL 3193915, at *9

(quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) ("[G]iven the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right.'")). The parties do not dispute that H.K. should remain at the Laurel School pending the resolution of Defendant East Brunswick's due process petition. However, the issue of which party must pay for H.K.'s tuition and transportation costs is directly related to the issue of H.K.'s pendent placement. *See M.R.*, 744 F.3d at 123 ("[F]inancing goes hand-in-hand with pendent private-school placement."); *Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S.*, 96 F.3d 78, 81 (3d Cir. 1996) ("The[] issues of pendent placement and financial responsibility are linked."); *E. Orange Bd. of Educ. v. E.M. ex rel. J.B.*, 2011 WL 601327, at *5 (D.N.J. Feb. 17, 2011) ("To allow a [party] to challenge the placement of a student, but not the ancillary services and financial responsibility related to such placement, is a notion unsupported by law and logic."). Therefore, the Court concludes that Plaintiff has a right of action to appeal ALJ Olgiati's decision to this Court.

Defendant East Brunswick further contends that this Court does not have jurisdiction over this appeal. (Opp'n at 5–6.) However, the IDEA explicitly states that federal district courts have jurisdiction over actions brought under § 1415(i)(2)(A) "without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A). District courts have accordingly considered appeals of "stay-put" orders. *See, e.g.*, *R.S.*, 2011 WL 32521, at *1 (characterizing these types of appeals as interlocutory); *M.K.*, 2006 WL 3193915, at *14 ("[I]t is well established that district courts may review ALJ stay-put orders while an underlying due process petition is pending before an ALJ."). For the foregoing reasons, it appears that Plaintiff has a right of action to file, and this Court has jurisdiction to consider, this appeal and Application for a Preliminary Injunction.

**III. Review of "Automatic Injunction" Under the IDEA**

The question before the Court is whether Defendant East Brunswick or Plaintiff must pay for H.K.'s Laurel School tuition and transportation costs during the pendency of Defendant East Brunswick's due process proceeding. None of the parties in this matter have argued that H.K.'s parents are obligated to pay for H.K.'s Laurel School tuition or transportation costs. The Court first addresses which party is responsible for H.K.'s Laurel School tuition.

A. *Financial Responsibility for H.K.'s Laurel School Tuition*

Under the IDEA, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This placement is sometimes referred to as the child's "pendent placement." *R.S.*, 2011 WL 32521, at *6 (citing *Raelee S.*, 96 F.3d at 82). The IDEA does not expressly state who is financially responsible for a child's placement during the pendency of due process proceedings. Therefore, the Court turns to New Jersey law and Third Circuit case law to assess the question of financial responsibility.[3]

Under New Jersey's Charter School Program Act, N.J. Stat. Ann. § 18A:36A-1 *et seq.*, when a student with learning disabilities attends a public charter school, the charter school is responsible for developing an IEP for that student. *L.Y.*, 384 F. App'x at 61 (citing N.J. Stat. Ann. § 18A:36A-11(b)). When the charter school develops an IEP, "the fiscal responsibility for any student currently enrolled in or determined to require a private day or residential school *shall*

[3] The IDEA, as a "model of cooperative federalism," "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, [but] imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (citations and internal quotations omitted).

*remain with the district of residence*." N.J. Stat. Ann. § 18A:36A-11(b) (emphasis added). "District of residence" means "the 'school district' as the term is utilized in N.J.A.C. 6A:14-2.7." N.J. Admin. Code § 6A:23A-15.4(b)(2). Plaintiff argues that, under N.J. Stat. Ann. § 18A:36A-11(b), Defendant East Brunswick, as the district of residence, is responsible to pay for H.K.'s pendent placement at the Laurel School. (Pl.'s Br. at 18–19, ECF No. 1-3.)

However, the same subsection of the statute also provides:

> Within 15 days of the signing of the individualized education plan, a charter school shall provide notice to the resident district of any individualized education plan which results in a private day or residential placement. *The resident district may challenge the placement within 30 days in accordance with the procedures established by law.*

*Id.* (emphasis added). While this provision establishes a school district's right to object to a charter school's placement, it is silent as to how a school district's right to object affects the obligation of a school district to pay for a charter school's placement. New Jersey regulations also do not explicate the relationship between a school district's right to object and a school district's financial responsibility. *See* N.J. Admin. Code § 6A:23A-15.4(b) ("The due process hearing [following the school district's challenge] shall be limited in scope to a determination by an [ALJ] as to whether there is a less-restrictive placement that will meet the student's educational needs and, if so, whether the charter school must place the student in the program.").

The Third Circuit has not directly defined a school district's obligation to pay for a student's pendent placement where, as in this case, a student's parents unilaterally move their child to a private school, the parents and a charter school implement a new IEP, and the school district challenges the placement within thirty days under N.J. Stat. Ann. § 18A:36A-11(b). As ALJ Olgiati reasoned in her Order, however, *L.Y. v. Bayonne Board of Education* appears to be the most analogous case to the present case. (*See* ALJ Order at 7–8.) In *L.Y.*, a child with

learning disabilities attended a state-funded charter school. 384 F. App'x at 59. The charter school developed an IEP for the child that would place him at a private school. *Id.* The child's mother agreed to this placement in June 2009. *Id.* at 59–60. The school district initiated a due process hearing under N.J. Stat. Ann. § 18A:36A-11(b), arguing that a placement within the district would provide the child with a FAPE in the least restrictive environment. *Id.* at 60. The Department of Education denied the mother's request to place the child at the private school during the pendency of the administrative proceedings. *Id.* The mother filed a complaint in federal district court, which held that the student's proper pendent placement was the charter school. *Id.* The mother appealed the district court's decision. *Id.*

The Third Circuit affirmed. *Id.* at 64. In a non-precedential opinion, the court explained that the June 2009 IEP had "not been implemented in any true sense." *Id.* at 61. The court reasoned, "If an IEP were considered 'implemented' as soon as it was signed by the student's parent, the school district's right to object in advance would be illusory." *Id.* at 62. The court read the IDEA's stay-put provision "in harmony with" N.J. Stat. Ann. § 18A:36A-11(b) to hold that, regardless of whether the charter school or school district was considered the LEA, the charter school and mother could not "dictate" the child's placement over the objection of the school district. *Id.* at 63 (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. . . . A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into a harmonious whole . . . .") (citations and internal quotations omitted)); *see also id.* ("Because Section 1415(j) of the IDEA does not anticipate a situation in which both a charter school and the school district have an interest in a child's education placement, we do

not construe Section 1415(j) as conflicting with the application of N.J. Stat. Ann. § 18A:36A-11(b) to this case.").

Like the charter school and mother in *L.Y.*, Plaintiff and H.K.'s parents agreed upon an IEP without involvement of the school district. (*See* ALJ Order at 4; Settlement Tr. 4:6–20, 22:17–22; Pl.'s Br. at 6–7.) Like the school district in *L.Y.*, Defendant East Brunswick objected to the placement within thirty days under N.J. Stat. Ann. § 18A:36A-11(b). (*See* Pl.'s Ex. D.) The same principles of statutory interpretation relied upon by the Third Circuit in *L.Y.* apply with equal force here. If Defendant East Brunswick were required to pay for H.K.'s Laurel School placement during the pendency of its due process proceeding, "the school district's right to object in advance would be illusory." *See L.Y.*, 384 F. App'x at 62. Reading the statutory provisions at issue harmoniously, the Court concludes that Plaintiff and H.K.'s parents cannot dictate an obligation to Defendant East Brunswick to pay for H.K.'s private school placement while Defendant East Brunswick's due process proceeding is pending.[4]

Other Third Circuit cases holding that a school district is obligated to pay for a child's pendent placement under the IDEA do not address the precise legal issue before this Court. For example, in *Drinker*, the Third Circuit characterized a school district's obligation to finance an educational placement as "implicit in the maintenance of the status quo," but the court did not have occasion to interpret the New Jersey statute at issue in this case. 78 F.3d at 865. In *Raelee S.*, parents who disagreed with a school district's IEP moved their child to a private school,

---

[4] One factual difference between *L.Y.* and the present case is that the student in *L.Y* was on summer break when the dispute arose. *L.Y.*, 384 F. App'x at 62. This fact informed the Third Circuit's conclusion that the charter school was the student's proper pendent placement. *Id.* Despite this difference, the Third Circuit's reasoning that the charter school and mother in *L.Y.* could not dictate the child's placement over the objection of the school district seems to apply here.

which a state special education appeals panel subsequently determined was the proper placement for the child. 96 F.3d at 80. The Third Circuit held that the private school became the child's proper pendent placement once the appeals panel ruled in favor of the parents and, therefore, the local school district's financial responsibility attached at that point. *Id.* at 84; *see also M.R.*, 744 F.3d at 123 (citing *Raelee S.* for the same proposition). Neither *Raelee S.* nor *M.R.* involved an interpretation of the New Jersey Charter School Program Act or a school district that had objected to a private school placement resulting from an independent negotiation between a charter school and a child's parents. Following the Third Circuit's reasoning in *L.Y.*, the Court denies Plaintiff's Preliminary Injunction Application to the extent that it requests that the Court vacate ALJ Olgiati's ruling requiring Plaintiff to pay for H.K.'s tuition at the Laurel School while Defendant East Brunswick's due process proceeding is pending.

B. *Financial Responsibility for H.K.'s Transportation Services*

Plaintiff does not oppose ALJ Olgiati's ruling that Defendant East Brunswick is required to transport H.K. to and from the Laurel School, but Plaintiff argues that Defendant East Brunswick must pay for H.K.'s transportation. (Pl.'s Br. at 30–32.) Under New Jersey law, "[t]he students who reside in the school district in which [a] charter school is located shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to students attending the schools of the district." N.J. Stat. Ann. § 18A:36A-13; *see also* N.J. Admin. Code § 6A:27-3.1(b) ("The transportation of students to and from a charter or renaissance school shall be the responsibility of the district board of education of the school district in which each student resides."). Moreover, school districts must provide transportation to "special education students who reside remote from their assigned school or who require transportation services in accordance with their individualized education program (IEP)." N.J.

Admin. Code § 6A:27-1.4(a).[5] Transportation to and from the Laurel School is listed as a provided service in H.K.'s Laurel School IEP. (Laurel School IEP at 24.) Therefore, the Court concludes that Defendant East Brunswick must pay for H.K.'s transportation costs to and from the Laurel School during the pendency of Defendant East Brunswick's due process proceeding.

The Court's reasoning in concluding that Defendant East Brunswick is not required to pay for H.K.'s tuition at the Laurel School does not extend to the issue of transportation costs. Whether a charter school student with learning disabilities remains in the charter school or attends a private school pursuant to an IEP, the resident public school district is required to pay for the student's transportation costs. The same is not true of private school tuition costs. A requirement that a school district pay for transportation costs during the pendency of a due process proceeding does not render the school district's prerogative to object to a charter school's placement illusory; the school district is required to pay for a charter school student's transportation regardless of whether an IEP is implemented. Therefore, the Court grants Plaintiff's Preliminary Injunction Application to the extent that it requests that the Court vacate ALJ Olgiati's ruling requiring Plaintiff to pay for H.K.'s transportation costs to and from the Laurel School pending the resolution of Defendant East Brunswick's due process petition.

**IV. Preliminary Injunction Analysis Regarding Tuition Payments**

Plaintiff contends that, notwithstanding the possibility of an "automatic injunction" under the IDEA, the Court should enter a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure. (Pl.'s Br. at 12.) Because the Court has already concluded that Defendant East Brunswick must pay for H.K.'s transportation costs, the Court will only apply a traditional

[5] New Jersey regulations define "remote" as "beyond two and one-half miles for high school students . . . and beyond two miles for elementary school students." N.J. Admin. Code. § 6A:27-1.4(a)(1).

preliminary injunction analysis to ALJ Olgiati's decision requiring Plaintiff to pay for H.K.'s tuition at the Laurel School. The Court will address each of the four elements of a preliminary injunction, which Plaintiff bears the burden of satisfying.

A. *Likelihood of Success on the Merits*

The Court concludes that Plaintiff has not satisfied its burden of demonstrating its likelihood of success on the merits.

1. Estoppel

Plaintiff contends that Defendant East Brunswick is estopped from "disavowing its stay-put obligations" because Defendant East Brunswick acknowledged that it was obligated to pay for a pendent placement in a previous matter before ALJ Patricia Caliguire. (Pl.'s Br. at 29–30 (citing Pl.'s Ex. K, ECF No. 1).) "The doctrine of judicial estoppel operates to bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted." *Cummings v. Bahr*, 685 A.2d 60, 66 (N.J. Super. Ct. App. Div. 1996) (internal quotations omitted). "The purpose of the judicial estoppel doctrine is to protect 'the integrity of the judicial process.'" *Ali v. Rutgers*, 765 A.2d 714, 718 (N.J. 2000) (citation omitted). "A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it *successfully* asserted in the same or a prior proceeding." *Id.* (emphasis added) (collecting cases). In response to a motion to dismiss before ALJ Caliguire, Defendant East Brunswick addressed the following legal issue: whether Defendant East Brunswick's petition was moot after a child's parents had transferred the child from Plaintiff Hatikvah to Defendant East Brunswick. (*See* Def. E. Brunswick's Supp. Br. at 3, Pl.'s Ex. K; ALJ Caliguire Op. at 7, *E. Brunswick Twp. Bd. of Educ. v. I.A. and I.A. ex rel. B.A.*, OAL Dkt. No. EDS 17692-18 (Dec. 19, 2019).) Defendant East Brunswick argued that its

petition was not moot (*id.*), but ALJ Caliguire concluded that the petition was moot (ALJ Caliguire Op. at 12). Because Defendant East Brunswick did not successfully assert its argument in the proceeding before ALJ Caliguire, Defendant East Brunswick is not estopped from asserting its principal argument in this case.

2. <u>Timing of Defendant East Brunswick's Challenge</u>

Plaintiff further submits that Defendant East Brunswick is time-barred from challenging H.K.'s placement because Defendant East Brunswick did not challenge the proposed Bridge Academy IEP in 2018. (Pl.'s Br. at 32–34.) Plaintiff argues that the New Jersey statute, which authorizes challenges to a child's "placement," refers only to the *type* of program in which the student is placed, rather than the *location* of the placement. (*Id.* at 32.) Plaintiff asserts that, under this interpretation, the time for Defendant East Brunswick to challenge H.K.'s "placement" expired thirty days after receiving notice of an IEP calling for placement at another private school—specifically, the Bridge Academy School. (*Id.* at 33.) The Court disagrees. The Third Circuit has interpreted the term "educational placement" in the IDEA to mean "whether [a change] is likely to affect in some significant way the child's learning experience." *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 154 (3d Cir. 1984). Other Courts of Appeals have concluded that, "at least in some situations, a child's 'educational placement' [under the IDEA] does not include the specific school the child attends." *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 217 (3d Cir. 2015) (collecting cases). The New Jersey Charter School Program Act's definition of "placement" is different. This Court has interpreted N.J. Stat. Ann. § 18A:36A-11(b) as permitting challenges to a program's location. *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 2011 WL 1253994, at *6 (D.N.J. Mar. 29, 2011), *aff'd* 542 F. App'x 139 (3d Cir. 2013).

Accordingly, the Court concludes that Defendant East Brunswick is not time-barred from challenging H.K.'s Laurel School placement.

3. Waiver

Plaintiff similarly maintains that Defendant East Brunswick waived its right to challenge H.K.'s placement because Defendant East Brunswick did not formally appear in the Bridge Academy Matter and did not object to the proposed Bridge Academy School IEP. (Pl.'s Br. at 34–35.) However, Defendant East Brunswick's failure to formally appear in the Bridge Academy Matter or object to H.K.'s placement before or during the settlement hearing with ALJ Rabin does not bar or waive Defendant East Brunswick's statutory right to object within thirty days to the new Laurel School IEP negotiated by Plaintiff and H.K.'s parents. Therefore, Plaintiff's argument that Defendant East Brunswick waived its right to challenge H.K.'s placement is unavailing.

4. Laches

Plaintiff argues that the doctrine of laches, "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party," *Knorr v. Smeal*, 836 A.2d 794, 800 (N.J. 2003), bars Defendant East Brunswick's challenge. (Pl.'s Br. at 36–37.) Because the Court has concluded that Defendant East Brunswick timely challenged the Laurel School IEP, the Court disagrees that the doctrine of laches precludes Defendant East Brunswick's petition. Therefore, Plaintiff has not satisfied its burden of showing its likelihood of success on the merits.

B. *Irreparable Harm*

Plaintiff has not shown that it would be irreparably harmed if it were required to pay for H.K.'s tuition during the pendency of Defendant East Brunswick's due process proceeding.

Plaintiff argues that paying for H.K.'s Laurel School costs while Defendant East Brunswick's due process proceeding is pending would cost over $70,000 per year, which would "all but eliminate Plaintiff's budget surplus this year." (*Id.* at 14.) However, "[a]s a general matter, a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (citation and internal quotations omitted). "Mere injuries, however substantial, in terms of money . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

In any action brought under § 1415(i)(2) of the IDEA, a court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2). This provision "confers broad discretion on the court." *Sch. Comm. of the Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985). Appropriate relief includes "restitution . . . for out-of-pocket expenses that the school district 'should have paid all along and would have borne in the first instance had it developed a proper IEP.'" *Chambers ex. rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 184 (3d Cir. 2009) (quoting *Burlington*, 471 U.S. at 371). Plaintiff has not demonstrated that a state administrative body or court could not order Defendant East Brunswick to reimburse Plaintiff for tuition payments if the Laurel School is determined to be a proper placement under the IDEA. Therefore, Plaintiff has not satisfied its burden of showing that it is "more likely than not" to suffer irreparable harm if required to pay for H.K.'s Laurel School tuition pending the resolution of Defendant East Brunswick's due process petition. *See Reilly*, 858 F.3d at 179.

C. *Balance of Harms and Public Interest*

Plaintiff posits that, if a preliminary injunction is not entered, school districts will be able to "file a challenge to a private school placement under [N.J. Stat. Ann. § 18A:36A-11(b)] to forestall funding." (Pl.'s Br. at 38.) Plaintiff adds that "[c]harter schools are not assured continued existence." (*Id.* at 39.) However, a preliminary injunction would fail to reconcile New Jersey school districts' obligation to pay for charter schools' placements with the statutory authority that the New Jersey Legislature provided to school districts to object to those placements. In conclusion, Plaintiff has not satisfied its burden of demonstrating that it is entitled to a preliminary injunction vacating ALJ Olgiati's ruling requiring Plaintiff to pay for H.K.'s Laurel School tuition during the pendency of Defendant East Brunswick's due process proceeding.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Application for a Preliminary Injunction is granted to the extent that it requests that the Court vacate ALJ Olgiati's ruling requiring Plaintiff to pay for the costs of H.K.'s transportation to and from the Laurel School while Defendant East Brunswick's due process proceeding is pending. Plaintiff's Application is denied to the extent that it requests that the Court vacate ALJ Olgiati's ruling requiring Plaintiff to pay for H.K.'s tuition at the Laurel School while Defendant East Brunswick's due process proceeding is pending. An appropriate Order will follow.

Date: May 12, 2020

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.