UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2083
_____

HATIKVAH INTERNATIONAL ACADEMY CHARTER SCHOOL, Appellant

v.

EAST BRUNSWICK TOWNSHIP BOARD OF EDUCATION;
A.K. & R.K. on behalf of H.K.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:20-cv-2382)
District Judge: Honorable Anne E. Thompson
_____

Argued: April 12, 2021

Before: CHAGARES, JORDAN, and SCIRICA, Circuit Judges
_____

JUDGMENT
_____

This cause came to be considered on appeal from the United States District Court for the District of New Jersey and was argued on April 12, 2021.

On consideration whereof, it is now hereby ORDERED and ADJUDGED by this Court that the Judgment of the District Court entered on May 12, 2020 is REVERSED IN PART and the case is REMANDED for further proceedings consistent with the Opinion of this Court. Costs to be taxed against Appellee East Brunswick Township Board of Education. All of the above in accordance with the Opinion of this Court.

ATTEST:

s/Patricia S. Dodszuweit
Clerk

Dated: August 19, 2021

**Certified as a true copy and issued in lieu
of a formal mandate on** September 10, 2021

**Teste:** *Patricia A. Dodszuweit*
**Clerk, U.S. Court of Appeals for the Third Circuit**

2

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2083
_____

HATIKVAH INTERNATIONAL ACADEMY CHARTER
SCHOOL, Appellant

v.

EAST BRUNSWICK TOWNSHIP BOARD OF
EDUCATION;
A.K. & R.K. on behalf of H.K.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:20-cv-2382)
District Judge: Honorable Anne E. Thompson
_____

Argued: April 12, 2021

Before: CHAGARES, JORDAN, and SCIRICA, <u>Circuit Judges</u>

(Filed August 19, 2021)

Thomas O. Johnston [ARGUED]
Johnston Law Firm LLC
151 Forest Street
Suite A
Montclair, NJ 07042

    Counsel for Hatikvah International Academy Charter School

Jodi S. Howlett [ARGUED]
Cleary Giacobbe Alfieri & Jacobs, LLC
955 State Route 34
Suite 200
Matawan, NJ 07747

    Counsel for East Brunswick Township Board of Education

Michael I. Inzelbuch
555 Madison Avenue
S.I. Bank & Trust Building
Lakewood, NJ 08701

    Counsel for A.K. & R.K. on behalf of H.K.

_____

OPINION OF THE COURT

_____

CHAGARES, Circuit Judge.

H.K. was a student at Hatikvah International Academy Charter School ("Hatikvah"), a public charter school located in East Brunswick, New Jersey. After H.K.'s parents unilaterally moved H.K. from Hatikvah to a private school, Hatikvah and H.K.'s parents agreed on an individualized education program ("IEP") that kept H.K. at the private school. The East Brunswick Township Board of Education ("East Brunswick"), H.K.'s resident school district, challenged this IEP in state administrative proceedings.

The parties dispute whether the financial responsibility for a student's pendent placement costs rests with the resident school district or the student's former charter school under the Individuals with Disabilities Education Act ("IDEA") and N.J. Stat. Ann. § 18A:36A-11, when the student's former charter school implemented the IEP that placed the student at a private school. The District Court concluded that financial responsibility for H.K.'s tuition costs rested with Hatikvah but ordered East Brunswick to pay for his transportation costs. We hold that financial responsibility for all pendent placement costs rests entirely with the resident school district. We therefore will reverse in part and remand.

I.

H.K. is a fifth grader who has been diagnosed with attention deficit hyperactivity disorder, oppositional tendencies, and developmental delays. He lives with his parents within East Brunswick's geographic boundaries. H.K. was previously enrolled at Hatikvah, a local educational agency. See 34 C.F.R. § 300.28(a) (defining a "[l]ocal

3

educational agency" as a "public authority legally constituted within a State" to direct or serve public schools). Although both East Brunswick and Hatikvah are funded by taxpayers, East Brunswick's annual budget is approximately twenty-five times greater than Hatikvah's budget.

In September 2018, Hatikvah proposed an IEP under which H.K. would attend the Bridge Academy School, a private school. H.K.'s parents instead unilaterally enrolled H.K. in a different private school, the Laurel School of Princeton (the "Laurel School"). H.K.'s parents subsequently filed a due process petition under the IDEA against Hatikvah and East Brunswick, seeking reimbursement for H.K.'s costs of attendance at the Laurel School. East Brunswick did not object at the time to H.K.'s placement at the Laurel School.

Hatikvah and H.K.'s parents settled on the record before the Administrative Law Judge ("ALJ"), and Hatikvah agreed, inter alia, to implement a new IEP that kept H.K. at the Laurel School. East Brunswick did not participate in the proceedings and was not party to the agreement. Counsel for East Brunswick, however, was present when the settlement agreement was placed on the record. The ALJ approved the settlement. East Brunswick subsequently filed a separate due process petition with the New Jersey Department of Education's Office of Special Education Programs in which it challenged H.K.'s placement at the Laurel School and argued that East Brunswick could provide H.K. with a free, appropriate public education in a less restrictive environment. The ALJ concluded in June 2021 that East Brunswick failed to

4

show that it could provide H.K. with the education provided for in his IEP.[1]

In response to East Brunswick's due process petition, H.K.'s parents filed an emergency motion to compel East Brunswick to pay for H.K.'s costs of attending the Laurel School while East Brunswick's due process petition was litigated. Hatikvah supported the motion. The parties agreed that H.K. should remain at the Laurel School while East Brunswick's petition was pending, meaning that the parties agreed that the Laurel School is H.K.'s pendent placement for purposes of the IDEA. They dispute only whether Hatikvah or East Brunswick should bear the cost of H.K.'s pendent placement. The ALJ concluded that East Brunswick would transport H.K. to and from the Laurel School but that Hatikvah would be responsible for both tuition and transportation costs.

Hatikvah sought an automatic injunction under the IDEA and a preliminary injunction from the District Court and asked the court to vacate the ALJ's order to the extent that it required Hatikvah to pay for H.K.'s costs. The District Court granted in part Hatikvah's motion and vacated the portion of the ALJ's order requiring Hatikvah to reimburse East

---

[1] The ALJ ordered East Brunswick to reimburse Hatikvah for H.K.'s costs from the date of his IEP — October 28, 2019. H.K. has attended the Laurel School, however, since September 2018. Because the ALJ's order did not address reimbursements for the 2018–19 school year and because Hatikvah has represented that it will appeal the ALJ's decision, absent relief from this Court, we conclude that this case is not moot. See United Steel Workers Int'l Union v. Gov't of V.I., 842 F.3d 201, 208 (3d Cir. 2016).

5

Brunswick for its transportation costs. East Brunswick does not appeal from this decision. The court otherwise denied Hatikvah's motion, so Hatikvah is currently required to pay for the tuition costs of H.K.'s pendent placement. Hatikvah timely appealed to challenge the District Court's decision with respect to tuition. H.K.'s parents support Hatikvah's position in these proceedings.

II.

We have jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1). The District Court had jurisdiction under 20 U.S.C. § 1415(i)(3) and 28 U.S.C. § 1331. We review de novo the application of the stay-put rule to a given set of facts. D.M. v. N.J. Dep't of Educ., 801 F.3d 205, 211 (3d Cir. 2015).

III.

Hatikvah contends that East Brunswick is responsible for H.K.'s pendent placement costs under the IDEA's stay-put rule and N.J. Stat. Ann. § 18A:36A-11. We agree. The stay-put rule requires that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This rule is protective in nature and reflects Congress's policy choice that all children with disabilities remain in their current educational placement until the dispute about their placement is resolved, "regardless of whether their case is meritorious or not." Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (quoting Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864–65 (3d Cir. 1996)). The stay-put rule consequently functions as an "automatic

6

preliminary injunction," and the "usual prerequisites to injunctive relief are not required." D.M., 801 F.3d at 211 (quoting Drinker, 78 F.3d at 864) (quotation marks omitted).

The primary factor in determining a child's current educational placement is the IEP that was "actually functioning" when the stay-put rule was invoked. Raelee S., 96 F.3d at 83 (quoting Drinker, 78 F.3d at 867). The stay-put rule does not immediately take effect if the parents "unilaterally move their child from an IEP-specified program to their desired alternative setting." M.R. v. Ridley Sch. Dist., 744 F.3d 112, 118 (3d Cir. 2014). The rule protects the new placement, however, "if the parents and the State or local educational agency agree to the change." Id. at 118–19 (quoting 20 U.S.C. § 1415(j)) (quotation marks omitted).

We have previously explained in disputes between parents and school districts that the financial responsibility for a student's pendent placement costs lies with the resident school district. See, e.g., id.; Raelee S., 96 F.3d at 84. The IDEA itself does not specify which party must pay for the student's stay-put costs. See 20 U.S.C. § 1415(j). But it is "well established" that the resident school district must fund a student's private placement if it is the educational setting the student's current IEP prescribes. M.R., 744 F.3d at 119. This financial obligation "arises automatically" when the private school is the student's pendent placement. See id. at 123 ("[T]he obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing."). Consequently, "financing goes hand-in-hand with pendent private-school placement." Id. A party therefore does not need to request separately reimbursement for the student's stay-put

7

costs. See id. (rejecting the school district's argument that "the IDEA does not automatically provide for reimbursement"); see also Raelee S., 96 F.3d at 84 ("[W]e conclude that a school district may be required to pay for tuition and expenses associated with a pendent placement prior to the conclusion of litigation."). Although our prior cases interpreting the IDEA have not addressed disputes involving charter schools, we see no reason why their reasoning and interpretation of the IDEA should not extend to this case to require East Brunswick to pay for H.K.'s pendent placement costs. See, e.g., M.R., 744 F.3d at 119; Raelee S., 96 F.3d at 84.

To the extent the IDEA and our case law are not dispositive of cost allocation in this situation, New Jersey law is. New Jersey law explicitly extends the resident school district's financial obligations to costs associated with an IEP that a charter school implements. N.J. Stat. Ann. § 18A:36A-11 broadly requires charter schools that provide services to students with disabilities to comply with state laws. But it also explicitly provides that "the fiscal responsibility for any student currently enrolled in or determined to require a private day or residential school shall remain with the district of residence," not with the charter school. Id. § 18A:36A-11(b). The statute, however, does allow the resident school district to challenge the student's placement within thirty days of receiving notice of the IEP. Id. Although the statute does not specifically refer to pendent placement costs, it can be read in harmony with the IDEA to require that a resident school district that challenges a student's private placement must still fund the student's pendent placement costs, even in cases where the charter school created and implemented the student's IEP. Raelee S., 96 F.3d at 84; see N.J. Stat. Ann. § 18A:36A-11(b); see also Dig. Equip. Corp. v. Desktop

8

Direct, Inc., 511 U.S. 863, 879 (1994) ("[C]ourts should construe statutes . . . to foster harmony with other statutory and constitutional law.").

In this case, H.K.'s parents unilaterally moved him to the Laurel School. H.K.'s parents, however, and Hatikvah, the local educational agency, subsequently agreed to a new IEP that kept H.K. at the Laurel School. Because Hatikvah agreed to the IEP that prescribes the Laurel School as H.K.'s educational setting and because H.K. was already a student at the Laurel School when the stay-put rule was invoked — points that the parties do not dispute — the stay-put rule protects H.K.'s pendent placement at the Laurel School. East Brunswick therefore must fund H.K.'s pendent placement at the Laurel School, including tuition and transportation costs. See M.R., 744 F.3d at 119. Hatikvah's status as a public charter school does not change East Brunswick's financial responsibilities. See N.J. Stat. Ann. § 18A:36A-11(b).

East Brunswick argues that Hatikvah is not entitled to relief under the stay-put rule because its claim concerns only monetary damages, not H.K.'s stay-put placement. But we have made clear that "financing goes hand-in-hand with pendent private-school placement." M.R., 744 F.3d at 123. East Brunswick's financial responsibility began under the stay-put rule once there was an agreement with respect to H.K.'s pendent placement. See Raelee S., 96 F.3d at 84. The IDEA does not require Hatikvah to request separately reimbursement for H.K.'s pendent placement costs. See M.R., 744 F.3d at 123; Raelee S., 96 F.3d at 84–85. Hatikvah is thus entitled to relief under the stay-put rule.

9

Our conclusion also does not render illusory East Brunswick's right to object to H.K.'s placement. N.J. Stat. Ann. § 18A:36A-11(b) gives resident districts the right to challenge a student's placement within thirty days — a right that East Brunswick has already exercised. Requiring East Brunswick to fulfill its financial obligations does not interfere with this right. The resident school district's responsibility to pay for the student's stay-put costs while challenging the student's placement "remain[s] intact" until the final resolution of the dispute, regardless of whether the school district's "case is meritorious or not." See M.R., 744 F.3d at 125 (quoting Drinker, 78 F.3d at 864) (emphasis omitted); see also Drinker, 78 F.3d at 865 ("[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing." (quoting Zvi D. ex rel. Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)) (alteration in original)). New Jersey law similarly imposes this requirement on resident school districts and does not exempt resident school districts from this financial responsibility when they challenge the student's placement. See N.J. Stat. Ann. § 18A:36A-11(b). East Brunswick is therefore permitted to object to H.K.'s placement, but it nonetheless must fund his pendent placement costs.[2]

---

[2] East Brunswick relies on our non-precedential opinion in L.Y. ex rel. J.Y. v. Bayonne Board of Education, 384 F. App'x 58 (3d Cir. 2010). East Brunswick's reliance on L.Y. is misguided. The Court in L.Y. was not only faced with distinguishable and non-analogous facts, but also the Court explicitly recognized that the school district "bears fiscal responsibility for a child's special education services when the

We recognize that our conclusion today may raise concerns that a public charter school unnecessarily will send students to a private school to shift fiscal responsibility to the resident school district. But reaching the opposite result and requiring charter schools — whose budgets are frequently much smaller than those of school districts — to bear the financial burden in turn could lead to charter schools refraining from placing students in private schools, thus depriving students that require private placement of an appropriate education. See M.R., 744 F.3d at 126 (discussing how stay-put protection is necessary to prevent parents from facing "the untenable choice" of removing their child from the child's private pendent placement or bearing the costs of this placement themselves); Raelee S., 96 F.3d at 87 (discussing how the IDEA requires that school districts bear the financial burden). New Jersey has explicitly rejected this alternative in favor of requiring resident school districts to bear the financial burden. N.J. Stat. Ann. § 18A:36A-11(b). In other words, New Jersey's decision to give charter schools the authority to implement IEPs while leaving financial responsibility with the resident school district means that any tension stemming from the separation of financial responsibility and decision-making authority is an apparently deliberate policy choice. See id. Just as "Congress has imposed a significant financial burden on States and school districts that participate in [the] IDEA," Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993), New Jersey too has placed this burden on resident school districts. See N.J. Stat. Ann. § 18A:36A-11(b). Although "we are mindful of the financial burden which will, in some

---

IEP requires placement at a private school." Id. at 61. Moreover, our non-precedential opinions are not binding, and we do not rely on them as authority. 3d Cir. I.O.P. 5.7.

11

instances, be borne by local school districts," <u>Raelee S.</u>, 96 F.3d at 87, our IDEA case law and the language of N.J. Stat. Ann. § 18A:36A-11(b) require that the resident school district pay for the student's pendent placement costs, even if the student's former charter school created and implemented the current IEP.³ <u>See, e.g.</u>, <u>M.R.</u>, 744 F.3d at 119.

## IV.

Because we conclude that East Brunswick bears the burden of H.K.'s pendent placement costs under the stay-put rule, we will reverse the District Court's Order with respect to H.K.'s tuition costs and remand for further proceedings.⁴

---

³  Our recent decision in <u>Y.B. v. Howell Township Board of Education</u>, 4 F.4th 196 (3d Cir. 2021), does not alter our conclusion, given that the stay-put provision did not apply in <u>Y.B.</u>, whereas it does in this case. <u>Id.</u> at 201.

⁴  Because we conclude that Hatikvah is entitled to an automatic injunction, we do not reach whether Hatikvah is entitled to a "traditional" preliminary injunction.

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



UNITED STATES COURT OF APPEALS
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790
Website: www.ca3.uscourts.gov

TELEPHONE
215-597-2995



September 10, 2021

Mr. William T. Walsh
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building and United States Courthouse
402 East State Street
Trenton, NJ 08608

RE: Hatikvah International Academy v. East Brunswick Township Board, et al
Case Number: 20-2083
District Court Case Number: 3-20-cv-02382

Dear Mr. Walsh:

Enclosed herewith is the certified judgment together with copy of the opinion in the above-captioned case(s). The certified judgment is issued in lieu of a formal mandate and is to be treated in all respects as a mandate.

Counsel are advised of the issuance of the mandate by copy of this letter. The certified judgment is also enclosed showing costs taxed, if any.

Very truly yours,

s/Patricia S. Dodszuweit,
Clerk

By: Stephanie
Case Manager
267-299-4926

cc: Jodi S. Howlett, Esq.
Michael I. Inzelbuch, Esq.
Thomas O. Johnston, Esq.